IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REILLY PERRETT, | ) |
| Plaintiff, | ) |
| -vs- | ) Civil Action No. 07-593 |
| HARMAR TOWNSHIP, | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## OPINION AND ORDER OF COURT

### SYNOPSIS

Pending before the Court is the Motion for Summary Judgment filed by Defendant Harmar Township. (Doc. No. 46). Both parties have filed briefs in this matter. (Doc. Nos. 47 and 60). Defendant has filed a Concise Statements of Material Facts, Plaintiff has filed a Counter-Statement of Material Facts, and both parties have filed responses to the opposing party's facts. (Doc. Nos. 48, 49, 57, 58, 59, and 63). Defendant has also filed a Reply to Plaintiff's Brief in Opposition. (Doc. Nos. 64, 65). After careful consideration of the submissions of the parties, and for the reasons discussed below, Defendant's Motion (Doc. No. 46) is granted in part and denied in part.

### I. APPLICABLE LEGAL STANDARD

Summary judgment is applicable when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law. Fed.R.Civ.P. 56 (c). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d

893, 896 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987). However, as the Supreme Court has recently emphasized, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) (internal quotations omitted). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." Id. (emphasis in original).

## II. FACTS

The factual background in this case is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. As our Supreme Court has stated; "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Plaintiff Reilly Perrett was employed as Chief of Police for Harmar Township, Pennsylvania from August 23, 2004 until March 6, 2007 when he was fired by the Board of Supervisors. (PCMF ¶ 8-9).[1] The elected Harmar Township supervisors at the time of the firing were Kimberly Toney, James DiPalma, Donald Muse, Barbara Noll, and Anthony Rozzano. (PRMF ¶ 8). Barbara Noll and Kim Toney were political allies during the period relevant to Perrett's firing. (PCMF ¶ 2). Rozzano was a political ally of the two women until mid-2007. (PCMF ¶ 3-4).

Robert W. Seibert, Jr. is a former Harmar Supervisor whose last term on the Board expired in December, 2005. (PCMF ¶ 11). During his time as Supervisor, Seibert participated in the termination of Richard Toney from his position as Chief of Police for Harmar Township.

---

[1] Plaintiff's Counterstatement of Material Facts (PCMF).

2

(PRMF ¶ 29).[2] Richard Toney was fired in May 2004. (PRMF ¶ 27). Richard Toney is Supervisor Toney's husband. (PRMF ¶ 23). Seibert and the Toneys were involved in subsequent litigation. (PRMF ¶ 37). On September 3, 2006, Rick Toney was rehired into the position of Captain. (PRMF ¶ 22). The rehiring was part of a settlement in the lawsuit captioned Richard A. Toney and Kimberly Toney v. Robert W. Seibert, Jr. et al, No. 06-4478, filed in this District. (PRMF ¶ 22).

Plaintiff was promoted to Chief of Police on August 23, 2004 subsequent to Richard Toney's firing. (PCMF ¶ 8). His promotion came at a time when Seibert and his political allies had control of the Board of Supervisors. (PCMF ¶ 39). Nearly a year later, an employment contract ("Agreement")was signed between Harmar Township and Reilly Perrett on August 15, 2005. (PCMF ¶ 435). Plaintiff's Agreement contained a clause which states: "Anytime during this Agreement, Employee shall have the sole right and option to resign as Chief of Police and return to his prior rank of Captain, a bargaining unit position, at a rate of compensation that has been established for Captains under the Collective Bargaining Agreement." (PCMF ¶ 423).

After the rehiring of Richard Toney, Perrett became concerned that a majority of the Supervisors would terminate his employment as Chief of Police. (PRMF ¶ 42). In September 2006, Perrett contacted the Pennsylvania Ethics Commission for information on filing an ethics complaint against Supervisor Toney. (PSMF ¶ 10). On October 25, 2006, Perrett filed a complaint with the Pennsylvania Ethics Commission against Supervisor Toney because he believed she was wasting government assets and taxpayer money in attempting to get her husband's job back. (PSMF ¶ 11)

During 2006, Perrett was not suspended, demoted, disciplined, or terminated. (PCMF ¶ 6). However, on October 9, 2006, the police committee of Harmar Township wrote a letter to

---

[2]Plaintiff's Response to Defendant's Concise Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (PRMF).

Attorney Gretchen Love requesting that she contact Supervisor Muse, who was at the time Chairman of the Board of Supervisors, to discuss allowing her to proceed with a disciplinary investigation against Perrett. (PRMF ¶ 43).

Perrett became aware that between October 9, 2006 and October 31, 2006, Attorney Love was checking payroll and the schedule. (PRMF ¶ 45). During the course of her investigation, Attorney Love wrote a report to Supervisor Noll dated December 27, 2006 noting inconsistencies between the police schedule and payroll and suggesting a manner in which to proceed. (PRMF ¶ 52). Love then met with the Police Committee of Harmar Township on January 9, 2007. (PRMF ¶ 53). Perrett then received a letter from the Pennsylvania Ethics Commission on January 10, 2007 stating that it would not commence a full investigation into his ethics complaint. (PCMF ¶ 14).

Following a meeting with the police committee, interviews with other Harmar police officers, and two meetings with Plaintiff, Attorney Love recommended that Plaintiff's employment be terminated. (PRMF ¶ ¶ 54, 58, 55). The first two meetings between Love and Plaintiff took place on January 19, 2007 and February 16 or 22, 2007. (PCMF ¶ 15, 18; PRMF ¶ 58). On February 27, 2007, Plaintiff was given a letter enclosing a statement of charges and advising him that he was to attend a meeting the next day, February 28, 2007, to answer additional questions of the police committee. (PCMF ¶ 19). On February 28, 2007, Plaintiff met with Attorney Love and Supervisor Rozzano. (PCMF ¶ 20). Plaintiff requested an attorney but was told that he was not permitted to have one. (PCMF ¶ 20). At the conclusion of the meeting, Supervisor Rozzano gave Plaintiff a letter informing him that he was placed on administrative paid leave effective immediately. (PCMF ¶ 23).

On March 2, 2007, Plaintiff's prior attorney wrote a letter to Attorney Love requesting that Plaintiff be permitted to return to his prior rank of Captain pursuant to his employment contract

with the township dated August 15, 2005. (PCMF ¶ 24, 446). On March 6, 2007, Plaintiff was terminated from his position as Chief of Police at a public meeting. Supervisors Muse, Noll, and Rozzano voted to terminate Perrett's employment. (PRMF ¶ 9,10). Supervisors Toney and DiPalma did not participate in the vote. Plaintiff was then sent a letter informing him of his termination. (PCMF ¶ 469).

## III. PROCEDURAL HISTORY

Plaintiff filed his complaint against Harmar Township on May 4, 2007. A First Amended Complaint was filed on May 7, 2007 and a Second Amended Complaint was filed on June 26, 2007. In Plaintiff's Second Amended Complaint, he makes five separate claims against the defendant. He alleges that he was fired in retaliation for the ethics complaint that he filed against Supervisor Toney in contravention of his First Amendment rights (Count I); that he was deprived of due process under 18 U.S.C. §1983 during the pre-termination process (Count II); that he was terminated in violation of Pennsylvania's Whistleblower law, 43 P.S.§ 1421 et.seq. (Count III); that he was terminated in violation of Pennsylvania's Police Tenure Act, 53 P.S. §812 (Count IV); and that his employment contract of August 15, 2005 was breached (Count V).

On July 13, 2007, defendant filed a Partial Motion to Dismiss under Rule 12 (b)(6) and a motion for a more definitive statement under Rule 12 (e). (Doc. No. 16). In its Motion to Dismiss, Defendant argued that Plaintiff's claims under the Police Tenure Act and federal due process must fail because Plaintiff was provided with adequate process throughout his discharge. Defendant also claimed that the Plaintiff's employment contract was void as a matter of law. I denied the motion to dismiss and the motion for a more definitive statement on September 17, 2007. (Doc. No. 33).

## IV. DEFENDANT'S MOTION

The Defendant filed this Motion for Summary Judgment on March 5, 2008 and raises several arguments as to why Plaintiff's claims should be dismissed in their entirety. Defendant argues that Plaintiff's First Amendment and state whistleblower law retaliation claims fail because the record does not show that the Defendant had knowledge of the filing of Plaintiff's ethics complaint and because Plaintiff's speech was unprotected as it fell within his official duties. Defendant also argues that Plaintiff has no claim for a violation of due process of law or his rights under the Police Tenure Act because he was given an appropriate pre-termination process and waived his right to a post-termination evidentiary hearing. Finally, Defendant argues that Plaintiff cannot pursue his contract claim because Harmar's previous Board of Supervisors had no statutory authority to enter into a contract that would allow Plaintiff to circumvent provisions of the Police Tenure Act.

A. COUNTS I and III, FIRST AMENDMENT and PENNSYLVANIA WHISTLEBLOWER

As stated above, Perrett contends that Harmar Township retaliated against him for having filed an ethics complaint against Supervisor Toney. Perrett's complaint alleged that Toney was wasting government assets and taxpayer money in attempting to get her husband rehired. Harmar Township disputes that Perrett was acting as a citizen rather than in the course of his public duty when filing his ethics complaint and denies that there is sufficient evidence of a causal connection between the ethics complaint and the firing of Perrett.

Plaintiff offers his record of the retaliation taken by the Township in his exhibits as follows. Plaintiff was in Rozzano's office with Muse when Muse asked Perrett if he filed the "labor relations papers" and told Perrett that "he should never have done so." (PSMF ¶ 472, Perrett 8-11). At the same meeting, Rozzano told Perrett that Defendant was "tired of him filing papers against them, that they had enough of him and were done with him." (PSMF ¶ 473, Perrett 8-11, 37-39). Immediately after Supervisor Toney recieved a letter dated January 10,

2007, from the Ethics Commission stating that the Commission was not going to further investigate a complaint involving Toney, Defendant investigated Plaintiff and terminated him thereafter. (PSMF ¶ 474, Perrett 8-11). Defendant never took any disciplinary action against Perrett until after Supervisor Toney received the letter from the Ethics Commission confirming that it would not further investigate a complaint against her. (PSMF ¶ 478, Perrett 124-128). Supervisor Toney stated in a newspaper article that the majority of the Board of Supervisors should be able to pick their own Chief of Police. (PSMF ¶ 476, Perrett 34, 35). In late November/early December 2006, Police Officers Fechke, Swetof, and Lt. Gaal told Perrett that Rozzano stated to each of them there was an Ethics Commission investigation. (PSMF ¶ 477, Perrett 53-57). Defendant also points to some evidence he suggests Plaintiff will use in support of his retaliation claim.

Defendant first argues that Perrett's speech in the form of the ethics complaint is not protected under the First Amendment because Perrett was acting in the course of his public duty when he made the complaint. Plaintiff points to his affidavit in contravention of this argument suggesting that because he signed the complaint as an individual and not using his title and used his home address, it was not within his public duties. (PCMF ¶ 44, Appendix Exhibit 33).

To establish a *prima facie* case of retaliation under 42 U.S.C. §1983 a plaintiff must demonstrate that: 1) that the activity at issue is protected by the First Amendment, 2) that the defendant took adverse employment actions against her, and 3) that there was a causal connection between the adverse action and her protected activity. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006); Nelson v. Upsala College, 51 F.3d 383, 386 (3d. Cir. 1995). A statement made by an employee is protected when it: 1) is made by the employee in his capacity as a citizen; 2) the statement involved a matter of public concern; and 3) the

7

government did not have an adequate justification for treating the speaker differently than a member of the general public. Hill, 455 F.3d at 242. "A public employee does not speak as a citizen when he makes a statement pursuant to his official duties." Id. (internal citations omitted).

Defendant argues that Plaintiff's duty to uphold the law pursuant to his police handbook and police oath somehow makes his ethics filing fall within his official duties. However, there is no evidence that Perrett had any specific obligation to file an ethics complaint regarding how Board members spent taxpayer dollars and used their power. The argument that this type of filing was a part of his greater duty to uphold the law is a stretch that cannot be supported by the evidence. Any person can submit a complaint to the Pennsylvania Ethics Commission with the expectation of complete confidentiality and ethics complaints are not mandatory in nature. 65 Pa. C.S.A. §1101, et seq. Drawing all reasonable inferences in Plaintiff's favor, there is a sufficient record supporting Plaintiff's contention that he did not file his ethics complaint pursuant to his official duties.[3]

Defendant's second argument focuses on the causal connection between the complaint and Plaintiff's subsequent firing, which it argues would require the denial of both the First

---

[3] The facts of this case do not warrant a finding as a matter of law that Perrett was acting within his official duties when he filed his ethics complaint. The facts are distinguishable from those cases upon which Defendant relies, Foraker v. Aaron, 501 F.3d 231 (3d Cir. 2007) and Cindrich v. Fischer, 512 F.Supp.2d 396 (W.D. Pa. 2007). In Foraker, state troopers and instructors made complaints to their supervisors and the state auditor with regard to conditions in the firing range in which they were participating in a firearms training unit. The Court found that the troopers were acting in the course of their official duties because they were running or participating in the program at the firing range about which they were complaining. In the instant case, Perrett's police duty to uphold the law did not then give him the definitive duty to report the wasting by the Board of taxpayer dollars in an inappropriate manner, even if it could indirectly affect his job. While Plaintiff had to answer to the Supervisors in his position as Police Chief, their expenditure of taxpayer dollars and their behavior in office were not issues central to his daily duties as the firing range was to the Officers in Foraker. The duty to file an ethics report in such a matter would not be expected of a typical person in the same position as Plaintiff. In Cindrich, an attorney employed by the Pennsylvania Office of Attorney General filed a motion in the Court of Common Pleas for Somerset County as counsel of record for the Commonwealth of Pennsylvania and claimed it was protected under the First Amendment. The Court found that it was filed pursuant to her official duties. Defendant admits that the facts of *Cindrich* are not on point. Therefore, as was stated above, there is sufficient evidence that filing ethics complaints was not a duty that was mandatory to Perrett and therefore, Defendant's arguments fail.

Amendment and Pennsylvania Whistleblower claims. Defendant makes several specific arguments regarding Plaintiff's evidence of a causal connection including that Plaintiff's evidence of knowledge on the part of the township and firing based on that knowledge is all conjecture and speculation, and that Seibert's deposition testimony regarding the township's knowledge of Plaintiff's ethics filing is inadmissible hearsay.

While it is true that when opposing a motion for summary judgment, "[a] plaintiff...must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law," Clark v. Modern Group Ltd, 9 F.3d 321, 326 (3d. Cir. 1993) (citations omitted), it is well established in this jurisdiction that the nonmoving party does not have to produce evidence in a form that would be admissible at trial to avoid summary judgment. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir 1990), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the court must be satisfied that the non-moving party's evidence is capable of being reduced to admissible evidence at trial. J.F. Feeser, Inc., 909 F.2d at 1542.

Plaintiff has established the first two prongs of the First Amendment analysis. To establish a causal connection, Plaintiff must show either a temporal proximity between the protected activity and the adverse employment action, or evidence of ongoing antagonism. Abramson v. William Patterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001). In the instant case Plaintiff has shown sufficient evidence of causation.

Defendant argues that Plaintiff strictly relies on inadmissible evidence to show that the Defendant had knowledge of Plaintiff's ethics filing and that Defendant acted on that knowledge. Defendant attempts to discount all evidence cited by Plaintiff that indicates that Harmar's decision to fire him was motivated by the filing of his ethics complaint. Plaintiff's record pertinent to Defendant's argument is as follows: 1) Toney stated in a newspaper article that the majority

9

of the supervisors should have their own chief and during the course of the year while Toney was supervisor, Perrett was not disciplined; 2) on January 10, 2007 a letter was sent from the Ethics Commission to both Toney and Perrett stating that there would be no further investigation at that time and he was subsequently summoned for investigative meetings by the Supervisors and fired; (3) when Toney's husband was rehired as Captain, the Township changed the rules and procedures allowing him to also hold the job of constable; (4) during the course of the investigation of Perrett, around February 22 or 23, 2007, Perrett filed papers with the union requesting that the police chief be admitted to the collective bargaining unit. He was then asked by Muse if he filed the Labor Relations papers and when Perrett indicated that he did, Muse indicated that he never should have filed them. Rozzano, who was also present during this conversation, indicated to Perrett that "they [were] tired of [him] filing papers against them and that they had enough of [him] and they [were] done with [him]"; (5) after the January 10, 2007 letter and prior to filing suit, Plaintiff spoke with Seibert who told him that Supervisor Rozzano had made a statement to Seibert that members of the board were aware that Plaintiff filed with the Ethics Commission; (6) in the course of the investigation against Perrett, Officer Swetof testified that Rozzano made mention of two investigations in the same breath, one involving the Ethics Commission and the other involving Perrett; (7) and Plaintiff could have been the only officer to file Ethics Commission charges due to the other officers being concerned about their jobs.

     Defendant relies on Keefer v. Durkos, 2006 WL 2773247 (W.D. Pa. 2006) for the proposition that none of the evidence cited by Plaintiff is competent, admissible evidence of knowledge on the part of Harmar because it involves speculation on how Harmar knew of the ethics filing. In Keefer, a school board secretary was fired after reporting alleged misconduct on the part of a school board director. The alleged misconduct of the school board director dealt

with cafeteria purchases. Plaintiff claimed that the entire Board had knowledge because she told two board members of the ethics filing and the remaining members knew because there was a state ethics investigation going on in a small town where people talk coupled with the fact that the plaintiff worked for an attorney's office that had requested documentation relating to the cafeteria purchases. No board member testified that they were aware that plaintiff was responsible for the ethics filing. Although they were all aware that an ethics complaint was filed, there was no admission on behalf of the Board that they were aware of who was responsible. The Court found that Plaintiff had not properly opposed Defendant's motion because she relied merely upon her own subjective interpretation of events. She had no direct evidence of the Defendants' knowledge. It was an illogical leap to presume that the Board members knew that she was the filer of the complaint just because she worked for the attorney requesting the documentation on the cafeteria purchases.

In the instant case, Perrett does not need to rely on his subjective interpretation of events or the subjective interpretation of others as he presents sufficient evidence of direct knowledge of his ethics filing on the part of several of the board members. Seibert tesified: "I asked [Rozzano] how he had heard about the fact that Barbara Noll and Kim Toney knew, and he said he had overheard them in conversation. He apparently was participating in a conversation, and they made a remark about it. But they had known that Reilly filed the complaint." (Depo. of Seibert, 27). Further, there is at least a reasonable inference that Rozzano was aware of Perrett's filing prior to the filing pursuant to his statement regarding the board being tired of Perrett filing papers against them and the testimony of Swetof that Rozzano had told him that the Ethics Commission had investigated the Board and found no wrongdoing at the same time that he was discussing the internal investigation against Perrett. (Doc. No. 49, Exs. A, U). I do not make a finding that all of the evidence that Defendant is claiming is inadmissible

11

is admissible, but instead that there is sufficient admissible evidence when viewed most favorably to Plaintiff to support his argument that the board had knowledge and acted on that knowledge.

With regard to Seibert's testimony, Defendant alternatively claims that the testimony regarding Noll and Toney's knowledge of the ethics filing is inadmissible hearsay. Plaintiff argues that these statements or parts of these statements are non-hearsay under 28 U.S.C.A. § 801 (d)(2) as a admission of a party-opponent or alternatively, because the statements are not being utilized to prove the truth of the matter asserted under 28 U.S.C.A. § 801 (c), or as hearsay under the state of mind hearsay exception at 28 U.S.C.A. § 803 (3).

When hearsay evidence is presented it should be considered without the full assurance that the contents can be proved by admissible evidence at trial. J.F. Feeser Inc., 909 F.2d at 1542, Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 95 (3d Cir. 1999), citing Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996). In the absence of the same, said evidence is not properly considered. Id. Thus, when a non-moving party points to arguably hearsay evidence, I must first determine whether the evidence has the potential to be admissible at trial. Id. If it is admissible, I may consider it in ruling upon the motion for summary judgment.

I do not agree with Defendant's argument that Seibert's statements regarding Kimberly Toney and Barbara Noll's knowledge of the ethics filing, as related to him by Rozzano, involves triple hearsay and are thereby inadmissible. Rozzano related to Seibert that at some time prior to the firing, Noll and Toney knew of the ethics filing by Plaintiff. Rozzano overheard Noll and Toney making these statements. How Noll and Toney came to know of the ethics filing is immaterial. The source of information for Noll and Toney's knowledge does not become a third level hearsay declarant. Thereby, I am convinced that, at the very least, these statements could

be admissible as an agency admission of a party opponent and are properly considered in the analysis of this motion evidencing a causal connection between the firing and Plaintiff's ethics filing.[4]

Therefore, Counts I and III under Pennsylvania's Whistleblower Law and First Amendment Retaliation stand, as sufficient evidence exists to make out a prima facie case. Defendant's motion is denied as to these Counts.

B. COUNTS II and IV, DUE PROCESS AND POLICE TENURE ACT

Plaintiff's claims for a violation of due process of law and his rights under the Police Tenure Act surround his pre-termination treatment by Harmar Township. The record reflects that Plaintiff was given the opportunity for a post-termination hearing, one was requested, and he subsequently withdrew his request for the hearing. (Doc. No. 49, Exs. L and M).

"To state a claim under [section] 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived on an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v Borough of Kutztown, 455 F.3d 225, 233-34 (3d. Cir. 2006).

As several courts have held, "[t]he Police Tenure Act provides adequate procedural safeguards for a full evidentiary hearing subsequent to a suspension or termination." Truhe v. East Penn Twp., No. 3:05-cv-1253, 2007 U.S. Dist. LEXIS 3976, at *17-18 (E.D. Pa. Jan 19, 2007) (citing Kelly v. Warminster Twp. Bd. of Supervisors, 404 A.2d 731 (Pa. Commw. 1979).

---

[4]Defendant relies on Carden v. Westinghouse Electric Corporation, 850 F.2d 996 (3d. Cir. 1988) for the proposition that the source of information for Toney and Noll's knowledge had to be identified in the record for the statements to be admissible. The instant case is distinguishable because Carden dealt with a statement by a Westinghouse agent that "they wanted a younger person." Therefore, the declarant was not the individual who believed that a younger person was needed and "they" were never identified in the record. In the case at hand, it is not an unknown declarant who had knowledge of Perrett's filing or made a damaging statement. Two township supervisors, Noll and Toney, purportedly made statements as to their knowledge that were heard by Rozzano and repeated to Seibert.

However, as the Supreme Court established in Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487 (1985), before a person with a protected property right in his job can be deprived of that property interest, he must receive "notice and an opportunity for hearing appropriate to the nature of the case." Loudermill, 470 U.S. at 542 (internal quotation omitted). The situation is similar under the Police Tenure Act as "an initial opportunity must be afforded the party to be dismissed or suspended, so that he or she may respond to the allegations of the dismissing authority". Viola v. Bensalem Tp. 1986 WL 2240 (E.D. Pa., 1986). While a pre-deprivation hearing may be "something less" than a full evidentiary hearing, the employee must receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546; Gniotek v. Philadelphia, 808 F.2d 241, 244 (3d Cir. 1986) (the two "essential requirements" of due process are notice and an opportunity to respond.) The purpose of a pre-termination or pre-suspension hearing is to "determine 'whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action.'" Gilbert v. Homar, 520 U.S. 924, 933 (1997), quoting Loudermill, 470 U.S. at 545-46. Notice is adequate if it (1) apprizes the employee of the nature of the charges and the general evidence against him or her, and (2) is timely under the circumstances of the case. Gniotek id. Notice may be served at the time of the pre-termination hearing and may be oral. Edmundson, 4 F.3d at 193. "All the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures." Loudermill, 470 U.S. at 547-48.

Plaintiff had a property interest in his job pursuant to the Police Tenure Act, 53 P.S. §811, *et seq.* In his opposition brief, Plaintiff claims that Defendant "never put him on notice of the proposed action against him, never provided him with an explanation of Defendant's evidence against him, and denied him the opportunity to present his side of the story." (Pl. Br. at

14

13). He also contends that he was inappropriately denied an attorney at the meetings. (Pl. Br. at 14). Despite Plaintiff's claims, I believe there is undisputed testimony by Plaintiff that he received all the process due him. His pertinent deposition testimony was as follows:

> Q: (By Ms. Monahan) I'm using authorization, authorization to proceed with disciplinary matters. At the time that you filed the complaint, did you have any idea whether Gretchen Love was authorized to proceed with disciplinary matters before you filed your ethics complaint?
> A: Discipline, I mean, the only time I would know there was discipline is whenever I had my last meeting with them. At the first meeting I had with them, if I didn't cooperate, they said I could be terminated. Then I knew. But prior to that, I just thought she was checking payroll and I didn't think I was doing anything wrong.
> ***
> Q: Exhibit H is a February 27, 2007 letter to you from the police committee signed by Rozzano and also has your signature on it. It encloses a statement of charges. Had you seen the statement of charges at any time prior to receiving this February 27 memo or letter from the personnel committee?
> A. No
> Q: How did you get this letter or memo from the committee?
> A: Anthony Rozzano gave it to me.
> Q: Did he ask you to sign it?
> A: Yes.
> Q. That's your signature on it?
> A: Yes.
> ***
> Q. Did Gretchen review the charges with you?
> A. She said–she brought up the charges. She said do you agree with them.
> Q. What did you say?
> A. I said no, I don't.

> Q. Did you say why you didn't agree with them?
>
> A. I said because a lot of the stuff you never let me give a complete answer nor would you show me all of the documents.
>
> Q. What did she say?
>
> A. She said, well, you can speak on the charges now.
>
> Q. And what did you say?
>
> A. I said I don't think I really can because Rozzano was sitting there and he had this envelope in his hand.
>
> Q. What do you mean by that?
>
> A. He had an envelope in his hand to give me, and I just told her I don't think there's anything I can say at this time because you already made your decision because they have already called Rick Toney who was already out in the hallway waiting to come in.
>
> (Doc. No. 49, Ex. A, 125, 167, 180-181)

Under the standard, Plaintiff admitted that he was given appropriate notice in the form of the statement of charges against him and given the opportunity to respond. He was also aware that the action proceeding against him could end in discipline. Plaintiff's decision not to respond to the charges against him due to his personal belief that a decision had already been made was immaterial to whether he was provided with adequate process. Additionally, although Plaintiff contends that he was entitled to a review of all of the documents against him, the right to a review of all the supporting documents is not contemplated in the law. A simple explanation of the evidence against an individual will suffice. Finally, Plaintiff points to no evidence or case law suggesting that he had a right to have an attorney present for his hearing.

As a result, Plaintiff's Counts II and IV for claims of violations of Due Process and the Police Tenure Act are dismissed.

## C. COUNT V, BREACH OF CONTRACT

The parties agree that on August 15, 2005, a document entitled "Employment Agreement" ("Agreement")was signed by Plaintiff and Harmar Township. Plaintiff's claim for

breach of contract is pursuant to a clause of the document entitling him to "resign as Chief of Police and return to his prior rank of Captain" at any time during the agreement. Defendant argues that this document is an unenforceable agreement under the Second Class Township Code, 53 P.S. § 65762, *et seq.*

The Second Class Township Code at 53 P.S. § 66912 adopts the provisions of the Police Tenure Act with regard to the removal of police officers. The Police Tenure Act applies to any "township of the second class...having a police force of less than three members". 53 P.S. §811. With regard to removals, the statute cites specific reasons for which a police officer may be removed including: "(1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty." 53 P.S. § 812. This section applies to any action where an officer may be suspended, removed or reduced in rank. Id.

Defendant argues that permitting an officer to return to a different rank during the course of disciplinary proceedings as was provided for in the August 15, 2005 Agreement is inconsistent with the Police Tenure Act. Defendant also argues that the entire contract should be voided as a matter of public policy because it binds a successor board to the continued employment of Perrett.

With regard to termination, the Agreement provides as follows:

> This Agreement shall have no term of expiration date. Rather, consistent with the provisions of the Police Tenure Act, 53 P.S. §§811-816, the parties agree that this Agreement may only be terminated by the resignation of the Employee or the dismissal or reduction in rank or furlough of Employee pursuant to the

17

     provisions of the Police Tenure Act and, in such event, all rights
     and obligations hereunder shall cease.
(Doc. No. 58, Ex. 8, Tab 28).

  Defendant fails to argue in what manner the Agreement is inconsistent with or violates the provisions of the Police Tenure Act. While the Agreement may provide for the return of Plaintiff to a bargaining-unit position at any time during the contract, it does not preclude the Board from pursuing a course of disciplinary action against Plaintiff after his return to that position. In fact, the Police Tenure Act is not position specific, and the Defendants would maintain the ability to proceed with disciplinary measures under the Act as was provided for in the contract.

  Defendant's alternative argument suggests that the contract is void due to its open-ended expiration date. Defendant is correct in that there is no expiration date for the contract. However, Plaintiff correctly points out that the cases on which Defendant relies deal with "eleventh-hour civil service hirings" that were determined to be void as against public policy. In the instant case, 1) Defendant provides no evidence that there was any deliberate misbehavior on the part of the Supervisors who put the contract in place and 2) Defendant continued to employ Plaintiff under the contract and conducted its behavior with regard to him pursuant to the contract up until the decision to fire him.

  Under Pennsylvania contract law, a municipal body may ratify a contract even if the contract, as initially executed, was put in place in contravention of law. See City of Scranton v. Heffler, Radetich & Saitta, LLP, 871 A.2d 875, 880-81 (Pa. Cmwlth. 2005). "This ratification may be made by the affirmative action of the proper officials or by any action or inaction which, under the circumstances, amounts to an approval of the contract." Id. In this instance, the members of the Board of Supervisors, as they stood at the time of the firing, had continued Perrett's employment under the terms of the Agreement for a full year after Seibert's term in office

expired. They even went so far as to follow the mandates of the Police Tenure Act with regard to a hearing for his removal as was stipulated to in the contract. Perrett had an interest and an expectation of continued employment pursuant to the contract. Therefore, even if the contract was initially improper, the actions of the Board in continuing to employ Perrett pursuant to it would negate the initial illegality.

As a result, Plaintiff's breach of contract claim stands and Defendant's motion is denied as to Count V.

## VI. CONCLUSION

In conclusion, based on the evidence of record, the briefs filed in support thereof, and the statements of material fact, I find that sufficient evidence exists for Plaintiff's Counts I, III, and V. Therefore, Defendant's Motion for Summary Judgment will be denied as to Counts I, III, and V and granted on Counts II and IV.

BY THE COURT:

/s/ Donetta Ambrose
Donetta Ambrose
U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REILLY PERRETT, | ) |
| Plaintiff, | ) |
| -vs- | ) Civil Action No. 07-593 |
| HARMAR TOWNSHIP, | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

ORDER

AND NOW, this 8th day of August, 2008, it is Ordered that Defendant's Motion for Summary Judgment (Docket No. 46) is GRANTED as to Counts II and IV and DENIED as to Counts I, III, and V.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge